ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCN. JOSÉ A. MÉNDEZ LÓPEZ<br><br>Apelada<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, *ET AL*<br><br>Apelante | **KLAN201700761**<br><br><br><br>**Consolidado** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm.<br>K DP1995-1140<br><br>Sobre:<br>Daños y Perjuicios |
| SUCN. JOSÉ A. MÉNDEZ LÓPEZ<br><br>Apelada<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET AL ADMINISTRACIÓN DE TERRENOS DE PUERTO RICO<br><br>Apelante | **KLAN201700764** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm.<br>K DP1995-1140<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Bonilla Ortiz y el Juez Ronda del Toro.[1]

### RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

El 29 de marzo de 2017, compareció ante este foro el Estado Libre Asociado de Puerto Rico (ELA) mediante un recurso de apelación, en el cual nos solicitó que revisáramos la *Sentencia* notificada el 29 de marzo de 2017, por el Tribunal de Primera Instancia, Sala de San Juan. De igual forma, el 30 de mayo de 2017, la Administración de Terrenos de Puerto Rico (Administración de Terrenos) había presentado un recurso

---

[1] Véase Orden Administrativa OATA-2024-093 del 15 de agosto de 2024, en la que se asigna el presente recurso al Hon. Eric R. Ronda Del Toro en sustitución del Hon. Carlos Vizcarrondo Irizarry.

Número Identificador
SEN2024 _____

de apelación, solicitando revisión de la misma *Sentencia*.

No obstante, el ELA junto con el recurso de apelación que presentó, solicitó la paralización de los procedimientos por virtud de la petición presentada bajo el Título III del *Puerto Rico Oversight, Management and Economic Stability Act* (PROMESA), Ley Pública 114-187, 48 USC sec. 2162.

Así las cosas, el 21 y 22 de junio de 2017 este Foro emitió una *Sentencia de Archivo Administrativo* en cada uno de los recursos instados.

Transcurridos varios años desde el archivo administrativo, el 31 de julio de 2024, la Sucesión de José A. Méndez López (Sucesión Méndez o "parte apelada") presentó una *Moción Solicitando Reanudación de Procedimientos Apelativos*. En esencia, sostuvo que había concluido el procedimiento de quiebra instado por el ELA, por lo que, procedía reactivar los procesos apelativos. A su vez, indicaron que la Administración de Terrenos nunca se sometió al Tribunal de Quiebras, por ello, se debía continuar el proceso en su contra.

El 3 de septiembre de 2024, la Administración de Terrenos presentó su *Oposición a Moción Solicitando Reanudación de los Procedimientos*. En esta, alegó que no procedía la reactivación de los trámites apelativos, debido a que aun existe un *injuction permanente* que prohíbe la continuación de estos procedimientos. Añadió que, aun cuando el Tribunal de Quiebra confirmó el Plan de Ajuste de Título III, ocurrió un descargue y relevo de distintas reclamaciones de acreedores, el cual cobija a la Administración de Terrenos. Esbozó que el reclamo -como el de autos-, está sujeto al *injuction permanente*,

por lo que, la parte apelada estaba impedida de continuar con la reclamación. Añadió que, específicamente la Sección 1.278 del Plan de Ajuste incluye a las corporaciones públicas del Gobierno, -como la Administración de Terrenos-, bajo la definición de "*Government Releasees*". A su vez, que habían radicado un "*proof of claim*" contra el ELA, por lo que, está bajo la jurisdicción del Tribunal de Estados Unidos para el Distrito de Puerto Rico como parte del procedimiento bajo PROMESA, *infra*.

El 12 de septiembre de 2024, luego de evaluar la moción instada por la parte apelada, emitimos una *Resolución* mediante la cual ordenamos reabrir los recursos presentados por el ELA y la Administración de Terrenos ante este Foro, para la continuación de los procedimientos. A su vez, por entender que los recursos estaban relacionados, ordenamos su consolidación.

El 16 de septiembre de 2024, el ELA -sin someterse a la jurisdicción- presentó una *Urgente Solicitud de Reconsideración y Solicitud de Orden*. En esencia, indicó que sería contrario a derecho una adjudicación en los méritos sobre la controversia, puesto que, está vigente el interdicto permanente instituido por el *Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Goverment of the Commonwealth of Puerto Rico, and the Puerto Rico Buildings Authority* (Orden de Confirmación). Así pues, sostienen que este Foro carece de jurisdicción sobre la materia para atender los méritos del caso.

Por su parte, la Sucesión Méndez presentó su oposición a la moción presentada por el ELA. En esta,

planteó que el caso de quiebras se limita exclusivamente al ELA, no obstante, el pleito debía continuar contra la Administración de Terrenos, debido a que estos nunca se acogieron a los beneficios de la Ley de Quiebra. Por ello, solicitaron dejar sin efecto la consolidación de los recursos de epígrafe, para la continuación y disposición en cuanto a la Administración de Terrenos.

El 19 de septiembre de 2024, emitimos una *Resolución*, mediante la cual le ordenamos al ELA se expresará sobre la moción presentada por la parte apelada.

De igual forma, el 20 de septiembre de 2024, la Administración de Terrenos presentó una *Moción para Solicitar Reconsideración de Resolución de 12 de septiembre de 2024*.

El 24 de septiembre de 2024, el ELA presentó una *Moción en Cumplimiento de Orden*. En esta, reiteró que se encuentra vigente el *injuction permanente* instituido por la *Orden de Confirmación*, lo que provoca que este Foro carezca de jurisdicción sobre la materia para atender los méritos del caso. A su vez, indicó que los apelados listaron como deudor a la Administración de Terrenos y al Gobierno de Puerto Rico, en consecuencia, dicha reclamación está bajo la jurisdicción de la Corte de Título III y se mantiene paralizada conforme al párrafo 59 de la *Orden de Confirmación*.

## II.

### -A-

La Sección 3 del Artículo IV de la Constitución de Estados Unidos de América le concede al Congreso la autoridad para adoptar leyes respecto a los territorios bajo su jurisdicción. Art. IV, Sección 3, Const. EE.

UU., LPRA, Tomo 1. En virtud de tal facultad, el 30 de junio de 2016, el Congreso aprobó el *Puerto Rico Oversight, Management and Economic Stability Act* (PROMESA), Ley Pública 114-187, 48 USC sec. 2162. Esta pieza legislativa establece la Junta de Supervisión y Administración Financiera (Junta) investida de una serie de poderes y responsabilidades vinculados con el manejo fiscal y presupuestario del Gobierno de Puerto Rico.

A los fines de cumplir su propósito, la precitada ley federal provee "un proceso de ajuste de deuda particular para Puerto Rico bajo el cual la Junta de Supervisión puede iniciar un trámite legal de quiebras". R. Emanuelli Jiménez, Y. Colón Colón, *PROMESA: Oversight, Management and Economic Stability Act,* 1ra ed., San Juan, Ediciones SITUM, 2016, pág. 48. En lo pertinente, la Sección 301 (a) del Título III de PROMESA incorpora las Secciones 362 y 922 del Código Federal de Quiebras respecto a las paralizaciones automáticas de pleitos en contra del deudor y su propiedad. *Lacourt Martínez, et al v. Jta. Lib. et al.*, 198 DPR 786, 787 (2017). El objetivo de este procedimiento es liberar al deudor de presiones financieras mientras se dilucida el procedimiento de quiebra. *Íd.*, pág. 788, citando a *Collier on Bankruptcy* Sec. 362.03 esc. 6.

El mecanismo de paralización impide "entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra." *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 255 (2012). Ahora bien, la petición de quiebra solo paraliza los procedimientos

contra el deudor que la solicitó. *Íd.*, pág. 243. De tal manera, la responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste. *Íd.* pág. 256, citando a *Cámara Insular Etc. v. Anadón*, 83 DPR 374, 380 (1961).

No obstante, el Tribunal Supremo de Puerto Rico ha sido cauteloso en favorecer un análisis mecanicista para decretar la paralización de reclamaciones contra el Estado. A modo ilustrativo, en *Requena Mercado v. Policía de Puerto Rico,* 205 DPR 285 (2020), resolvió que la impugnación de unas preguntas de ascenso no constituye una reclamación monetaria sujeta a la paralización automática del Título III de PROMESA. En su razonamiento jurídico concluyó que "al examinar las particularidades del caso a la luz del derecho aplicable, resulta forzoso concluir que el remedio solicitado por los peticionarios no radica en una reclamación monetaria. En consecuencia, este caso no está paralizado." *Íd.*, págs. 298-299. Al respecto, emitió el siguiente pronunciamiento:

> [E]l resultado positivo de la impugnación del examen escrito apenas constituye el primer escalón que los peticionarios deben alcanzar para seguir compitiendo en las demás partes del proceso de evaluación para el ascenso al rango de capitán. Resulta claro que, en la fase en controversia, no hay aspectos monetarios en controversia. Por consiguiente, no podemos estar de acuerdo con el razonamiento del foro administrativo. Por el contrario, los foros recurridos debieron evaluar con más cautela las particularidades del caso y, así, cumplir a cabalidad su deber de interpretar si un pleito está o no paralizado según el Título III de la Ley PROMESA. *Íd.*, pág. 298.

De manera similar, en *Lacourt Martinez v. JLBP, supra,* determinó que procedía la continuidad de una

serie de casos relacionados con (1) la Junta de Libertad bajo Palabra; (2) la clasificación de custodia; (3) la solicitud de terapias; (4) la evaluación de plan institucional; (5) la impugnación de sanciones; (6) la adjudicación de bonificaciones, y (7) la retención de pertenencias incautadas durante un cateo. En este dictamen, razonó que dichos casos no involucran reclamación monetaria alguna contra el Estado. *Íd.*, pág. 789. Asimismo, en *Lab. Clínico v. Depto. Salud*, 198 DPR 790 (2017), avaló la continuidad de un pleito que giraba en torno a la relocalización de un laboratorio clínico y un permiso para construir una torre de telecomunicaciones. En la determinación, exhortó a proceder con mayor cautela en el contexto de la quiebra gubernamental y la paralización de pleitos de conformidad con PROMESA. *Íd.*, págs. 792-793.

Ante aquellas reclamaciones con similares elementos, "nuestros tribunales locales poseen jurisdicción concurrente para evaluar si un caso está efectivamente paralizado o si está sujeto a las excepciones de la paralización, en virtud del Título III de la Ley PROMESA." *Requena Mercado v. Policía de Puerto Rico*, supra, pág. 291. Véanse, además: *Lab. Clínico et al. v. Depto. Salud et al.*, supra, pág. 792; *Lacourt Martínez et al. v. JLBP et al.*, supra, pág. 788. Lo anterior implica que los foros adjudicativos tienen el deber ministerial de cerciorarse que cuentan con la autoridad para decretar la continuidad o la paralización del caso.

**-B-**

De conformidad con la Sección 301 (a) del Título III de PROMESA, el 3 de mayo de 2017, la Junta presentó

una petición de quiebra ante el Tribunal de Distrito Federal de Puerto Rico. La radicación de este proceso implicó "la paralización automática de los pleitos que generalmente reclaman, como parte de los remedios, una compensación monetaria. Particularmente, los pleitos presentados —o que pudieron presentarse— contra el Gobierno de Puerto Rico antes de que se iniciara la quiebra." *Requena Mercado v. Policía de Puerto,* supra, pág. 291.

Acogida la petición de quiebra, el 18 de enero de 2022, el Tribunal de Distrito Federal de Puerto Rico emitió el O*rder and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ("Confirmation Order" u "Orden de Confirmación").

Esta determinación confirmó el *Modified Eighth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico*, mejor conocido, como el Plan de Ajuste de la Deuda (Plan de Ajuste), y consecuentemente, se determinó que el 15 de marzo de 2022 sería su fecha de efectividad ("effective date"). Ello produjo una serie de consecuencias jurídicas en torno al proceso de quiebra gubernamental y los reclamos monetarios. En lo pertinente, el inciso 59 decreta un *injunction permanente* sobre aquellas reclamaciones presentadas bajo las siguientes circunstancias:

> **59. Injunction on Claims.** Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that

is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan, or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

El precitado inciso sustituye el efecto de paralización automática de casos ocasionados por la aprobación y vigencia de la Sección 301 del Título III de PROMESA. En consecuencia, la Sección 92.2 del Plan de Ajuste instaura un trámite para gestionar la

paralización de reclamos monetarios contra el ELA. Para ello, establece el mecanismo de descarga y relevo de acciones en atención a la quiebra. El aludido inciso lee de la siguiente manera:

**92.2 Discharge and Release of Claims and Causes of Action:**

a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-

Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

[…]

La Sección 1.135 del Plan de Ajuste establece que un "*claim*" es:

Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or

unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

Resulta importante destacar que quedaron resguardados por el *injunction permanente* "[a]ny agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority, or municipality of the Government of Puerto Rico." Asimismo, la Sección 1.277 del Plan de Ajuste expresamente establece:

> […] "Government Released Claims" shall not include any and all rights, privileges, Claims, demands, liabilities, or Causes of Action of any and every kind, character or nature whatsoever (a) against (i) the Debtors (or their successors, including Reorganized Commonwealth) or COFINA arising from or relating to the Debtors' obligations pursuant to the Plan or the securities to be issued pursuant to the Plan or that were issued pursuant to the COFINA Plan, or (ii) a Government Releasee unrelated to the Debtors or the Claims discharged pursuant to the terms and provisions of the Plan, (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct or (c) arising from or related to claims or bonds issued, or contracts or leases entered into, by AFICA, CCDA, HTA, MBA, MFA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA, other than CW/Convention Center Claims, CW/HTA Claims, CW/MBA Claims, CW/PRIFA Rum Tax Claims, and the CW Appropriations Claims.

Continua la Sección 1.278 del Plan de Ajuste estableciendo quiénes son los "*Government Releasees*":

> **1.278 Government Releasees:** Collectively, the Government Parties and the Debtors, including all instrumentalities, municipalities, **public corporations and public agencies of the Commonwealth,** together with their respective current or

former board members, directors, principals, agents, officers, employees, advisors and professionals, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the Title III Cases in their capacities as such; provided, however, that, notwithstanding the foregoing, "Government Releasees" shall not include AFICA, CCDA, COFINA, HTA, MBA, MFA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA solely with respect to any Claims against or bonds issued by such Entities, other than CW/Convention Center Claims, CW/HTA Claims, CW/MBA Claims, CW/PRIFA Rum Tax Claims, and related to the CW Appropriations Claims.

**III.**

Luego de evaluar las mociones antes esbozadas y presentadas por las partes, concluimos que le asiste la razón al ELA y a la Administración de Terrenos. Veamos.

Conforme al derecho antes expuesto, el 30 de junio de 2016, entró en vigor PROMESA. El 3 de mayo de 2017, el ELA presentó una petición de quiebra ante el Tribunal Federal de Distrito de Puerto Rico al amparo del Título III de PROMESA. Dicha petición activó una paralización sobre todos los procedimientos y causas de acción que surgieron con anterioridad al 3 de mayo de 2017, y con respecto al ELA y a todas sus agencias y departamentos por los que este tuviera que responder.

Posteriormente, el 18 de enero de 2022, el foro federal emitió una *Orden de Confirmación*, que entró en vigor el 15 de marzo de 2022. En lo pertinente a la controversia de autos, el Plan de Ajuste instituyó la figura del *interdicto permanente* que aquí evaluamos si detiene o no el presente reclamo. En su parte pertinente, el párrafo 59 de la *Orden de Confirmación* dispone:

Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final

Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan […] against any of the Released Parties or any of their respective assets or property Confirmation Order […].

De conformidad con el *interdicto permanente* mencionado debemos tomar en cuenta toda información disponible para ver si le aplica a este caso la paralización inmediata que se contempla en PROMESA. El Plan de Ajuste, dispone que el *Confirmation Order* constituirá una determinación judicial a partir de su fecha de efectividad. Por consiguiente, a partir de ese momento, los deudores a los que les aplique quedarán liberados y las reclamaciones de estos, descargadas.

En el caso de autos, la reclamación de la Sucesión Méndez contra el ELA y la Administración de Terrenos -al ser una corporación pública del Gobierno-, se encuentra bajo la jurisdicción del Tribunal de Estados Unidos para el Distrito de Puerto Rico. Esto, debido a que conforme dispone el párrafo 59 de la *Orden de Confirmación* existe un *injunction* permanente que mantiene paralizadas todas las reclamaciones, presentes, pasadas y futuras contra el Gobierno de Puerto Rico y de igual forma, los acreedores quedan impedidos de empezar cualquier procedimiento en contra del Gobierno de Puerto Rico. A su vez, el reclamo presentado por los apelados

contra el ELA y la Administración de Terrenos es anterior a la vigencia de la *Orden de Confirmación*. Por lo que, conforme con los párrafos anteriormente aludidos de la *Orden de Confirmación*, la parte apelada tiene una acción contra el ELA y una corporación pública del Gobierno que ha sido descargada.

## IV.

Por los fundamentos antes expuestos, ordenamos el archivo administrativo del presente recurso. No obstante, nos reservamos la jurisdicción para decretar la reapertura de este, en caso de que dicha paralización sea dejada sin efecto o hasta que por otro fundamento proceda continuar con los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones